**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**KENNETH JOHNSON,**          )
                              )
     **Petitioner,**          )
                              )          **11 C 5903**
     **v.**                   )
                              )          **Judge Joan H. Lefkow**
**TERRY McCANN,**[1]          )
                              )
     **Respondent.**          )

## OPINION AND ORDER

*Pro se* petitioner Kenneth Johnson (prisoner number N90177), who is currently

incarcerated in the Illinois River Correctional Center in Canton, Illinois, is serving a fifteen-year

sentence for residential burglary.  He has petitioned this court for a writ of habeas corpus under

28 U.S.C. § 2254, contending that the state trial court's denial of a continuance so he could

retain private counsel instead of being represented by a public defender violated his Sixth

Amendment right to be represented by the counsel of his choice.  For the following reasons, his

petition is denied.

## BACKGROUND

The court will presume that the state court's factual determinations are correct for the

purposes of habeas review as Johnson neither contests them nor points to clear and convincing

evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1); *Todd* v. *Schomig*, 283 F.3d 842, 846 (7th

---

[1] Johnson's petition named Randy Davis, the former warden of Logan Correctional Center, as the
respondent.  Johnson was recently transferred to the Illinois River Correctional Center.  Accordingly,
Walter Nicholson, the warden of that facility, is hereby substituted as the respondent.  *See* Rule 2 of the
Rules Governing Section 2254 Cases in the United States District Courts; *Rumsfeld* v. *Padilla*, 542 U.S.
426, 436 (2004).

Cir. 2002). The court thus adopts the state court's recitation of the facts and will briefly summarize the key facts which are relevant to Johnson's § 2254 petition.

**A.      Pretrial Proceedings**

On May 1, 2007, Johnson was indicted for residential burglary and aggravated battery. Specifically, the indictment alleged that, on April 17, 2007, Johnson "knowingly and without authority, entered the dwelling place of Raymond Mitchell, located at 7943 South St. Louis Avenue, in Chicago, Cook County, Illinois, with the intent to commit therein a theft, in violation of [720 ILL. COMP. STAT. § 5/19-3]." *See* Respondent Ex. B at C15-16. The grand jury also indicted Johnson for aggravated battery, alleging that he, "in committing a battery, intentionally or knowingly and without legal justification and by any means, caused bodily harm to Raymond Mitchell, a person sixty years of age or older, by striking him about the body, in violation of [720 ILL. COMP. STAT. § 5/12-4(b)(10)]." *Id*. at C15, C17.

On May 25, 2007, the trial court appointed a public defender to represent Johnson. Counsel for the State as well as Johnson and his appointed counsel appeared before the court for status hearings on June 13, 2007, and July 24, 2007. On August 21, 2007, the court held a further status hearing and Johnson demanded a jury trial. The court thus scheduled the case for a jury trial beginning October 9, 2007.

On October 9, 2007, the State appeared for trial, but Johnson's appointed counsel advised the court that his client wanted a continuance so he could retain counsel and stated that Johnson's family had been trying to locate an attorney. The State objected, arguing that Johnson was attempting to delay the trial as he had ample opportunity to retain new counsel prior to the trial date. The court asked Johnson if a private attorney was ready to file an appearance. His

counsel responded that Johnson was "trying to get in touch with an attorney. He's going to have an attorney shortly." Respondent's Ex. D at 3-4.

Johnson then claimed that he was "never even notified" that the case would go to trial that day. *Id*. at 4. The court corrected him, stating:

> that's why we bring you out in here in open court so that things aren't a secret. Everything that's been done on your case . . . has been done publicly while you were standing right in front of me just like you are now. . . . This matter was set back in August, [and] given a long date so that witnesses could be arranged for, and there were some complications, making sure one of the witnesses was going to be able to testify with an interpreter or something. So we gave it from August 21 until today's date, set the matter for trial, and there was a jury trial selected.

*Id*. at 4-5. It also considered and rejected the request for a continuance, stating:

> I would certainly give that great deference to your request [for] a private attorney if you had the private attorney here standing in front of me, or you had that attorney come in maybe even last week and say I'm going to come in, I'm going to be representing Mr. Johnson and please grant me a continuance, that way we could have let the State's Attorney know to have their witnesses called off. But now the witnesses are here and they're ready to go, sir, or they're at least ready to be here tomorrow, assuming that the jury was going to be picked today. So I can't really grant your motion for a continuance on the possibility that some five months after the case first appeared on my call you might somewhere down the road have a private attorney come in and represent you. So your request for a continuance will be respectfully denied.

*Id*. at 5-6.

In response, Johnson voiced his dissatisfaction with his appointed counsel by advising the court that he disagreed with counsel's recommendation to accept a ten-year plea agreement. The court noted that it had appointed counsel based on Johnson's representations that he could not afford to retain counsel himself. Johnson denied that he was trying to delay the trial and assured the court that he could promptly obtain new counsel because his sister "finally told [him] she'd start messing with this" by locating a paid attorney. *Id*. at 10. The court, however, again

denied the request for a continuance and told Johnson that if retained counsel appeared, he could participate in jury selection but otherwise, the case would proceed to trial.

This did not end the discussion about Johnson's counsel, as Johnson informed the court that an attorney had just approached him and given him a business card.  The court passed the case.  After the court resumed session, it reported that during a break, attorney Brian Dosch asked if the case could be continued so he could file his appearance "at some point in the future once he was retained." *Id*. at 14.[2]  The court stated that he advised counsel that he could file an appearance now and proceed to trial.  Dosch declined to do so, explaining that Johnson had introduced himself in the lock-up while he was talking to another client, Johnson's family had told him they could not retain him today, and he was not ready to go to trial.

Johnson then took a different tack and told the court that he "want[ed] to object" to proceeding to trial with appointed counsel because he had a "conflict of interest."  When asked about the conflict, Johnson explained that he and his appointed counsel disagreed about whether he should accept a plea deal.  The trial judge advised Johnson that a disagreement about strategy was not a conflict and again told him the case would go to trial.  Johnson again contended that he was "lost to the fact" that the trial was set for that day, and the court responded, "[N]o, you weren't lost to the facts.  You were standing right there.  That's why I don't believe you." *Id*. at 17.

---

[2]  The record contains two spellings of this attorney's name.  The Illinois Appellate Court refers to counsel as Brian Dosch, Respondent's Ex. B, while the transcript of proceedings refers to him as Brian Dotsch, Respondent's Ex. D.  The court takes judicial notice of the fact that on-line records of the Illinois Attorney Registration and Disciplinary Commission show that Brian Dosch is authorized to practice law in Illinois.  It will thus use the Illinois Appellate Court's spelling.

The court then proceeded to have a venire of potential jurors brought into the courtroom and excused them for lunch. After lunch and outside the presence of the venire, Johnson waived his right to a jury trial, which the court accepted after a colloquy with Johnson and his counsel. The court set the case for a bench trial the next day and advised Johnson that "unless somebody else comes in and is willing to try the case tomorrow," appointed counsel would represent him. *Id*. at 30-31. Johnson answered affirmatively when the court asked if he understood.

The next day, October 10, 2007, the trial witnesses, a court reporter, and a sign language interpreter were all ready to proceed to trial. Dosch stepped up, told the judge that Johnson had retained him, and requested a continuance to file an appearance because he could not "be ready without having an opportunity to talk to [Johnson] over at the jail" in private. Respondent's Ex. A at 4. The court told Dosch that on the previous day, it had advised Johnson that if he retained private counsel, that attorney would have to file an appearance and be ready to proceed to trial on October 10th. The court also noted that it had to retain "some control over the trial calendar" and could not "allow a defendant to completely take over the control" of its courtroom. *Id*. at 4-5. The court reminded counsel that witnesses and an interpreter were ready for trial and offered to allow Dosch to meet with Johnson in a private lock-up if it would assist him in deciding whether to file an appearance. *Id*. at 5. Dosch rejected this offer, stating, "[i]t would be unethical for me to proceed to represent him without an opportunity to talk to him and see if there is any corroborating evidence for his planned testimony. For that reason, I am not going to be able to file my appearance." *Id*. The case then proceeded to trial, where Johnson was represented by two public defenders.

**B.      Johnson's Trial and Sentencing**

At trial, the State and the defense presented competing versions of an interaction that took place on April 17, 2007, between Raymond Miller, who resided at 7943 South St. Louis Avenue in Chicago and his neighbor, petitioner Kenneth Johnson, who resided at 7939 South St. Louis Avenue in Chicago.  Miller, who was 64 years-old at the time and was born deaf, testified for the State.  According to Miller, on April 17, 2007, at approximately 11:15 a.m., he let his dog Buddy go outside to the backyard and left the door unlocked.  After a 15 minute nap, Miller went to let Buddy back inside.  At that time, he noticed a shelf in his kitchen had been moved.  He went down to the basement to investigate, observed that his tool boxes had been moved, and saw a shadow.  Alarmed, Miller went upstairs and headed outside to look for help.  Although he did not see anyone who could come to his aid, he noticed a man, later identified as Johnson, exiting his back door.

Johnson shoved Miller to the ground and started to run, but Miller grabbed Johnson's sweatshirt.  As the men scuffled, Miller recognized his grooming kit, which was in Johnson's back pocket, retrieved it, and threw it on the ground.  Miller ran after Johnson after he fled from the scene.  Johnson was eventually arrested after a neighbor called the police.  After being read his rights, Johnson told police he had been merely looking through Miller's trash and asked why the police would believe anything Miller, a "crazy, old deaf guy," said.  The police returned to Miller's home, where they saw that the back gate and back door were open and the grooming kit was lying on the ground.

Johnson, who was 37 years-old at the time of the incident, testified on his own behalf.  According to Johnson, in February of 2007, he met Miller at a gas station on Chicago's southwest side and gave Miller a ride home.  Four or five times over the next two months, Miller

paid Johnson $40 per visit to come to his home to provide sexual favors. Johnson testified that

on the morning of April 17, 2007, he visited Miller and the two men drank beer and had a sexual

encounter. Miller gave Johnson $20 and said he would pay the rest later. They argued, Johnson

told Miller that he would tell Miller's girlfriend about their relationship, and Miller pushed

Johnson as Johnson attempted to leave Miller's house. Johnson did not return to his own home

as he did not want to tell his family about his relationship with Miller. Miller ended up chasing

Johnson down an alley and around the corner. Johnson testified that when he was arrested,

Miller was holding Johnson's sweatshirt and the grooming kit, and that he had permission to be

in the house and did not take the grooming kit.

Johnson was found guilty of residential burglary and acquitted of aggravated battery.

Johnson filed a post-trial motion seeking a judgment of acquittal or, alternatively, a new trial. In

that motion, he alleged, among other things, that the trial court's rejection of his request for a

continuance denied him his constitutional right to counsel of his own choice. The trial court

denied the post-trial motion, stating:

> [d]efendant's last-minute, 11th-hour claim that he was going to get a private
> attorney, when no one appeared and the follow-up hiring — trying to get an attorney
> by having a warm body walk through the lock-up, in this Court's view, was meant
> for one purpose and one purpose only, and that was to delay the trial from
> proceeding in an orderly manner.

*Id*. at 6. Johnson was ultimately sentenced as a Class X offender to a fifteen-year term of

imprisonment on the residential burglary count.

### C.    Direct Appeal

Johnson appealed his conviction to the Illinois Appellate Court, arguing that the trial

court violated his constitutional right to counsel of his choice when it denied him a continuance.

The Illinois Appellate Court rejected this argument and affirmed. Respondent's Ex. A at 12.

Johnson filed a petition for leave to appeal with the Illinois Supreme Court raising the same issue which was denied on September 29, 2010. The respondent represents that Johnson did not file a petition for a writ of certiorari with the United States Supreme Court.

### D. State Postconviction Petition

On August 24, 2011, Johnson filed a *pro se* petition for relief from judgment pursuant to 735 ILL. COMP. STAT. § 5/2-1401, *et seq*., arguing that his sentence was void because the State failed to notify him in the charging instrument of its intent to seek a Class X sentence upon conviction. The trial court denied the petition on November 4, 2011. The respondent represents that Johnson did not appeal from the denial of his § 2-1401 petition.

### E. Federal Habeas Petition

On August 25, 2011, the court received Johnson's § 2254 petition, which was dated July 29, 2011. After Johnson paid the filing fee, his petition was filed on October 25, 2011. *See* Dkt. 7 and 8. Johnson raises a single claim: that the trial court's denial of his request for a continuance to hire a private attorney on the day of trial violated his Sixth Amendment right to the counsel of his choice. The respondent concedes that the petition is timely, exhausted, and not barred by procedural default. This case was recently reassigned to this court as the judge originally assigned to this case retired.

## ANALYSIS

### A. Standard of Review

A habeas petitioner is not entitled to a writ of habeas corpus under 28 U.S.C. § 2254 unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28

U.S.C. § 2254(d)(1); *Williams* v. *Taylor*, 529 U.S. 362, 404–05, 120 S. Ct. 1495, 146 L. Ed. 2d

389 (2000). A state court's decision is "contrary to" clearly established Supreme Court law "if

the state court arrives at a conclusion opposite to that reached by the Court on a question of law"

or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme

Court precedent and arrives at a result opposite to ours." *See Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a habeas petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of

Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable.

*Harrington* v. *Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011) ("even a strong

case for relief does not mean that the state court's contrary conclusion was unreasonable").

**B.     Johnson's Sixth Amendment Claim**

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall

enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Johnson asserts that the trial court's denial of his request for a continuance, on the day of trial, so

he could retain new counsel violated his Sixth Amendment right to have the counsel of his

choice. The Illinois Appellate Court rejected this argument, explaining:

> [Johnson] has a sixth amendment right to counsel, but the right to counsel of choice
> may be limited in some cases. . . . The trial court has the inherent discretion to
> balance defendant's right to counsel of his choice with the orderly administration of
> justice, and that determination turns on the particular facts of each case. Factors to
> be considered are whether the request is an act to thwart the administration of justice
> or impede the effective prosecution of the case; the lack of evidence that new counsel
> is ready, willing, and able to take and proceed with the case; defendant's failure to
> state an acceptable reason for wanting new counsel; and the representation of current
> counsel for a lengthy period of time prior to the request for new counsel. No abuse
> of discretion in the denial of a continuance will be found where new counsel does not
> stand ready, willing, and able to make an unconditional entry of appearance on
> defendant's behalf.

Respondent's Ex. A at 6-7 (internal citations omitted).

The Illinois Appellate Court based its ruling on Illinois law, as opposed to Supreme Court precedent. Where a state appellate court rules on the merits of an argument raised by the petitioner but does not discuss the claim with reference to federal law, it is irrelevant as long as the standard applied by the state court is as demanding as the federal standard. *Oswald* v. *Betrand*, 374 F.3d 475, 477 (7th Cir. 2004) (citing *Mitchell* v. *Esparza*, 540 U.S. 12, 15-16, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (per curiam)); *see also Early* v. *Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam).

Here, the standard used by the Illinois Appellate Court tracks the federal standard, under which a court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *United States* v. *Gonzalez-Lopez*, 548 U.S. 140, 152, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (internal citations omitted). "Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" violates the Sixth Amendment right. *United States* v. *Sellers*, 645 F.3d 830, 834 (7th Cir. 2011) (quoting *United States* v. *Carrera*, 259 F.3d 818, 824–25 (7th Cir. 2001)). To determine if a decision was arbitrary, the court must consider the circumstances of the ruling and the reasons given by the judge. *Id.* at 834-35. Moreover, "[e]ven where Sixth Amendment rights are at stake, a district court legitimately can balance the right to counsel of choice against the demands of its calendar and make scheduling and other decisions that effectively exclude chosen counsel." *Id.* at 835-36 (citing *Gonzalez–Lopez*, 548 U.S. at 152).

In the instant case, the reasons provided by the state court in support of its decision to deny a continuance comport with federal law. The trial court observed that Johnson had

appeared in court multiple times over the course of five months without objecting to representation by his appointed counsel, knew about the trial date a month before he told the court he wanted new counsel, and asked for a continuance on the day of trial after introducing himself to Dosch, who was visiting another client in jail. It also noted that it offered Johnson time to meet privately with Dosch prior to starting trial, but Dosch declined because he did not want to file an appearance without first determining if any evidence supported Johnson's position. Respondent's Ex. A at 7-9. It thus concluded that Johnson had ample opportunity to retain counsel but was making an "11th-hour claim that he was going to get a private attorney . . . for one purpose and one purpose only, and that was to delay the trial from proceeding in an orderly manner." *Id.* at 6.

This decision flowed from the application of "the correct legal rule to the facts of a case." *See Garth* v. *Davis*, 470 F.3d 702, 710 (7th Cir. 2006) (citing *Williams*, 529 U.S. at 405). It thus is not "contrary to" Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

The court thus turns to whether the state court's decision was an unreasonable application of federal law. A defendant does not have an absolute right to obtain a continuance upon demand so he can attempt to locate a new lawyer. *See Gonzalez-Lopez*, 548 U.S. at 152; *see also Carrera*, 259 F.3d at 824-25 (denial of a continuance based on the trial court's finding that the defendant was attempting to delay was not arbitrary when the defendant criticized his appointed counsel and asked for time to retain his own counsel one week prior to trial). On the day of trial, Johnson told the court that he would promptly retain new counsel because his sister "finally told [him] she'd start messing with this" by finding him a lawyer. Respondent's Ex. A at 10. The trial court declined to delay the trial, finding that Johnson was aware of the trial date well in advance and had ample opportunity to locate new counsel prior to trial but failed to do so and,

-11-

instead, made a last gasp effort to stave off trial by accosting a random lawyer visiting a client in the jail's lock-up on the day of trial.

"[A] defendant may not use [the Sixth Amendment right to counsel] to play a 'cat and mouse' game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *United States* v. *Murphy*, 469 F.3d 1130, 1135 (7th Cir. 2006). The trial court found that Johnson's efforts to find a new lawyer were untimely, half-hearted, and "meant for one purpose and one purpose only, and that was to delay the trial from proceeding in an orderly manner." Respondent's Ex. A at 6. This conclusion is amply supported by the record and thus comfortably falls within the "boundaries of permissible differences of opinion" regarding the Sixth Amendment right to counsel of a defendant's choice. *See Dietrich* v. *Smith*, 701 F.3d 1192, 1194 (7th Cir. 2012) ("That standard is not met unless the decision in question is objectively unreasonable and falls well outside the boundaries of permissible differences of opinion.") (internal quotations omitted). Thus, it is a reasonable application of federal law.

This conclusion is not affected by Johnson's claim that he needed a continuance due to a conflict of interest caused by his appointed counsel's recommendation to plead guilty. *See* Respondent's Ex. D at 17. Unless there is a complete breakdown of communications between an attorney and his client, "differences in strategy do not constitute grounds for new counsel." *United States* v. *Van Waeyenberghe*, 481 F.3d 951, 959-60 (7th Cir. 2007). Here, the trial court expressed its belief that Johnson's two appointed attorneys were experienced and ready to go to trial and advised Johnson that his disagreement with counsels' recommendation did not rise to the level of a conflict of interest. The record shows that Johnson was able to interact

appropriately with his lawyers and Johnson has not alleged that his counsel were ineffective. Moreover, there is no federal constitutional right to counsel who provides advice that is entirely acceptable to a client. *See United States* v. *Turk*, 870 F.2d 1304, 1307-08 (7th Cir. 1989) (the Sixth Amendment guarantees constitutionally adequate representation, but does not require a defendant and his counsel to have "good rapport."). Accordingly, the trial court's rejection of Johnson's efforts to jettison his counsel because they advised him to plead guilty is neither contrary to nor an unreasonable application of clearly established Sixth Amendment precedent. *See* 28 U.S.C. § 2254(d)(1). Johnson is, therefore, not entitled to federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should issue. Under 28 U.S.C. § 2253(c)(2): "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis* v. *Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

For the reasons stated above, the court finds that there can be no showing of a substantial constitutional question for appeal as reasonable jurists would not "debate whether the challenges in [Johnson's] habeas petition should have been resolved differently or that his petition adequately shows a sufficient chance of the denial of a constitutional right that he deserves encouragement to proceed further." *Rutledge* v. *United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Accordingly, the court declines to issue a certificate of appealability.

## CONCLUSION

The clerk is directed to substitute Walter Nicholson, the warden of the Illinois River Correctional Center, as the respondent. In addition, for the foregoing reasons, Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 petition is denied, and the court declines to certify any issues for appeal under 28 U.S.C. § 2253(c).

DATED: February 14, 2013

JOAN HUMPHREY LEFKOW
United States District Judge